[Crim. No. 4112. Second Dist., Div. One. July 17, 1947.]

THE PEOPLE, Respondent, v. JESSE GRANT MATTHEWS, Appellant.

Leola Buck Kellogg and Montgomery G. Rice for Appellant.

Fred N. Howser, Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Respondent.

DORAN, J.—A jury having been waived, defendant, adjudged guilty by the court of the offenses of murder and assault with a deadly weapon, appeals from the judgment and the order denying a motion for a new trial.

The evidence reveals that Mrs. Hattie Brown, the victim of the assault with a deadly weapon offense, lived with her nine-year-old daughter at the rear of 718 East 43rd Street in Los Angeles; she and her husband were separated. Defendant lived about a block away at 819½ East 43rd Street; he and his wife were separated. Mrs. Brown and the defendant had been friends for a couple of years and each had visited the other. There was evidence of affection on the part of defendant for Mrs. Brown; evidence of presents in sums of money given by him to her, although defendant testified that this was for services rendered in the form of clerical work. Defendant also drove Mrs. Brown to and from work.

The offenses occurred about 9 :45 p. m.; at this time Mrs. Brown had left her house and had walked out to the street to meet Lonnie Eskridge and Ples Eskridge, with whom she had an appointment. At this time and place the defendant appeared and engaged Mrs. Brown in a conversation; Mrs. Brown testified as follows:

"Q. Did you talk with him then? A. Yes.

"Q. Was there any discussion about what you were going to do or where you were going? A. He asked me where I was going and I told him out with some friends.

"Q. Is that about the substance of it? A. And then I asked him—during that time there was a strike on the buses and the street cars were on a strike and he carried me to work, several mornings and I asked him if I should expect him by on the next morning and he said he would be there and then he walked away.

"Q. Now, when the defendant walked away, had you seen Lonnie Eskridge or his automobile? A. While I was talking to Mr. Matthews, Lonnie Eskridge and Ples Chester Eskridge were driving up.

"Q. In other words, you recognized them in the car? A. That is right.

"Q. Was it somewhat light around there? A. Yes, there is a street light right east—well, it is in the center of the street but it is east of where I was standing.

"Q. So that it was not very dark there? A. No.

"Q. Then, will you relate what happened from that time on? A. Well, Mr. Matthews walked east and I didn't go immediately out, I paused a second, and when I got to the sidewalk from this position where I was standing, I didn't see Mr. Matthews going east on 43rd, . . .

.  .  .  .  .  .  .  .  .  .

Q. By Mr. Johnson: You may go ahead. A. Then I walked to the—after leaving the position on the driveway, I walked to the rear of Lonnie Eskridge's car and then around to the south side of the car, which the car was facing west, and I went around the opposite side of the car which would be the south side, and got in the front seat beside Chester Eskridge.

"Q. When this car stopped across the street, was it just about opposite from where you were standing with the defendant or was it east or west? A. Well, I was standing facing south on the driveway and they drove with the car facing east, they drove almost opposite from where I was standing on the driveway across the street.

"Q. And did you notice over there near where the car was parked anywhere, a fire hydrant? A. Yes, I did.

"Q. Was it parked east or west of that, as you observed it? A. Well, I believe it was a little to the west of the fire hydrant, I am not sure.

"Q. And when you went across the street to the car, did you walk around the rear or the front of the car? A. I walked around the rear, I believe.

"Q. You said you got into the car? A. Yes.

"Q. Now, go ahead. A. I got into the car and Lonnie — after I had gotten seated, Lonnie started to get into the car and Chester spoke up and said, 'Here is that guy coming back,' in the meantime I believe when I was getting into the car, Chester asked me, 'Who was that guy?' And I— before I could tell him, he said, 'Here is that guy coming back toward the car, who is he?' And about that time the gun started firing, the man started shooting.

"Q. Did you yourself observe who it was? A. Yes.

"Q. That was headed back toward the car? A. Yes.

"Q. Who was it? A. It was Mr. Matthews.

"Q. When the gun started firing did you observe who that was? A. Yes.

"Q. Who was shooting? A. Yes, Mr. Matthews.

"Q. The defendant here? A. Yes."

The defense was an alibi.

It is appellant's contention that the evidence of defendant's guilt is "inherently improbable," and that "it is clear that at the time of that statement the court actually entertained a reasonable doubt that appellant was even present at the time of the shooting and that the court's mind was in that condition because he was considering *only* the identification by Mrs. Brown and the evidence of several witnesses as to alibi." (Italics included.) ■ The "statement" refers to a summary of the evidence together with comments thereon by the trial judge at the conclusion of the trial. The "statement" which was somewhat extensive embraces ten pages of the reporter's transcript. Regardless of what the trial judge may have stated, the fact remains that the defendant was adjudged guilty. And the question as to whether the evidence is sufficient to sustain the judgment is determined by a review of the *evidence*. On appeal, the court is not required, under the law, to analyze and account for the trial judge's comments on the evidence. ■ An examination of the record discloses nothing inherently improbable as a matter of law in the evidence relied on to support the judgment.

Evidence of other circumstances which it is argued tend to support appellant's contentions, such as evidence of a powder burn and the number of shots fired, merely reflect a conflict in the evidence as to details; the weight to be given to such evidence was for the trial court's determination.

The evidence is abundantly sufficient to support the judgment, and there being no errors in the record, the judgment and the order denying a motion for a new trial is affirmed.

York, P. J., and White, J., concurred.

A petition for a rehearing was denied July 25, 1947, and appellant's petition for a hearing by the Supreme Court was denied August 14, 1947.